**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company, | No. CV-19-04954-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Tracey Portee Murphy, et al., | |
| Defendants. | |

This matter arises from the issuance of a subpoena *duces tecum* under Federal Rule of Civil Procedure 45. Plaintiff/Counterdefendant Evanston Insurance Company ("Evanston") asks the Court to compel production of documents subpoenaed from investigator Keith Tolhurst and Tolhurst International, LLC ("Tolhurst"). (Doc. 69.) Defendants/Counterclaimants Tracee Portee Murphy, *et al.* ("Murphy") ask the Court to deny Plaintiff's motion and to provide work-product protection for the documents. (Doc. 68.) Plaintiff has replied. (Doc. 70.) The Court has considered the parties' briefs and supporting submissions, as well as the joint summary of the discovery dispute (Doc. 55). For the following reasons, the Court will grant Plaintiff's motion.

**I.   BACKGROUND**

Raymond Canty ("Canty") d/b/a Soul Brothers Motorcycle Club ("Soul Brothers") purchased a commercial general liability policy, with a $2 million policy limit, from Evanston in anticipation of Soul Brothers' annual fish fry event held on April 6-7, 2017. At the event, Arthur Murphy, Jr. was shot and killed. The family of the deceased filed a

wrongful death lawsuit against Canty and other named defendants in the Superior Court of Arizona for Maricopa County (the "Underlying Action"). *See Murphy v. Pearce Lincoln Props., LLC*, No. CV2019-001932 (Ariz. Super. Ct. July 1, 2020). Evanston contends the purchased policy excludes claims stemming from assault or battery. It denied coverage and declined to tender a defense for Canty, Soul Brothers, or any other insureds in the Underlying Action.

In 2019, Murphy's counsel hired Tolhurst to locate Canty in order to negotiate a *Damron* agreement between the adverse parties in the Underlying Action.[*] The executed agreement assigned a $9 million judgment against Soul Brothers and the other insureds in the Underlying Action. Evanston contends the *Damron* agreement was fraudulent and/or collusive and that it is Murphy's burden to show otherwise. Evanston thus argues that the circumstances surrounding Canty's negotiation and execution of the *Damron* agreement is a central issue and that they are entitled to discover such information. Evanston deposed Canty and asked him about his communications with Tolhurst and Murphy's counsel. Canty had trouble recalling ever meeting with Tolhurst or Murphy's counsel; he likewise was not able to testify to any specifics from any meetings or the circumstances surrounding the *Damron* agreement. Evanston has now subpoenaed Tolhurst's investigative file as it relates to the Canty investigation and *Damron* agreement negotiations.

## II.   WORK-PRODUCT DOCTRINE

Federal common law governs the issue of work-product privilege presented here. *See* Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989). To qualify as privileged work product, the material must be (1) a document or tangible thing, (2) prepared by or for counsel or its representative, (3) in anticipation of litigation or for trial. *See* Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles*, 422 U.S. 225, 237-38 (1975);

---

[*] *Damron* agreements stem from an Arizona Supreme Court decision. *See generally Damron v. Sledge*, 105 Ariz. 151 (1969). The Ninth Circuit has confirmed their usage as a "settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured." *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 748 F.3d 911, 912 n.1 (9th Cir. 2014). The insured accepts liability for the underlying incident and assigns its rights against the insurer to the injured party. The injured party relieves the insured of liability and agrees to recover from only the insurance company. *Id.*

*Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011). The doctrine extends to documents or materials compiled by an investigator working at an attorney's direction in preparation for litigation. *Nobles*, 422 U.S. at 238–39; *see also* Fed. R. Civ. P. 26(b)(4)(D) (providing similar protection from discovery of "facts known or opinions held" by a non-testifying expert retained in anticipation of litigation). The privilege is qualified and waivable. *Nobles*, 422 U.S. at 239.

When material is created by an attorney or his investigator for the singular purpose of preparation for litigation, it is clearly privileged work product. However, when the material may be said to have a "dual purpose, that is, where it was not prepared exclusively for litigation," the determination of privilege is more difficult. *Richey*, 632 F.3d at 568. The Ninth Circuit employs the "because of" test to determine if material created with a dual purpose is work product. *See id.* Dual-purpose documents are considered work product if, based on the totality of the circumstances of the case and the particular document's nature, it "can be fairly said to have been prepared or obtained because of the prospect of litigation . . . and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907-08 (9th Cir. 2004)); *see also* Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994).

### III.    DISCUSSION

Evanston subpoenaed four categories of documents: Tolhurst's fee agreement with Murphy's counsel, Tolhurst's billing invoices, and correspondence and notes detailing Tolhurst's investigation of Canty's whereabouts and their subsequent meeting with Canty regarding the *Damron* agreement and Canty's declaration. (Doc. 69, p. 3; Doc. 55, p. 2.) Murphy argues that the Tolhurst information is shielded from discovery as work product, relying on the idea that Tolhurst's communications and documents were prepared in anticipation of the current litigation. (Doc. 68, p. 2.) Evanston argues that the documents do not qualify as work product, because they were not prepared in anticipation of litigation. (Doc. 69, p. 3-4.) In the alternative, Evanston argues that the privilege was otherwise

waived and that they have met the burden of showing applicable exceptions to any privilege protection. (*Id.*)

Because application of the privilege "can derogate from the search for the truth," it is narrowly construed and the party invoking the doctrine "bears the burden of establishing all the elements that trigger the protection; doubts must be resolved against the party asserting the privilege." *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985). If the party seeking protection meets their initial burden, the party seeking discovery then carries the burden that an exception or waiver applies. *See U.S. Inspection Servs., Inc. v. NL Eng'red Sols., LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010).

Thus, as the party asserting privilege, Murphy bears the first burden of showing with precise facts that each subpoenaed document is work product created in anticipation of litigation. *See 22.80 Acres of Land*, 107 F.R.D. at 22-26; *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012); *see also RLI Ins. Co. v. Conseco, Inc.*, 477 F.Supp.2d 741, 748 (E.D. Va. 2007) (affidavits from knowledgeable people are preferred to meet this burden).

Murphy contends that work-product protection should extend to Tolhurst's materials concerning Canty and the execution of his declaration and the *Damron* agreement, because "Tolhurst's involvement in Murphy counsel's investigation, location, and interview of . . . Canty was done in anticipation of this litigation and he was acting as an agent of Murphy's counsel at all times during the investigation." (Doc. 68.) Murphy explains, however, that Tolhurst's engagement was necessary to find Canty "for essentially a settlement discussion" and that similar investigations occur in virtually all *Damron* cases. (*Id.*) Because the documents and communications were created in order to locate Canty and to negotiate and execute the *Damron* agreement, their creation was not singularly aimed at the prospect of this litigation—they served a dual purpose.

Applying the Ninth Circuit's "because of" standard, the burden of proof, and the totality of the circumstances, the Court cannot properly conclude that Tolhurst's notes and communications regarding Canty "can be fairly said to have been prepared or obtained

1  because of the prospect of litigation . . . and would not have been created in substantially
2  similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568-69. Murphy merely
3  asserts that Tolhurst's documents are "paradigmatic" work product. For the same reason,
4  the Court finds that the general-purpose billing invoices and fee agreement are not
5  privileged. *See Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*,
6  No. 08cv1559, 2009 WL 3857425 at *2 (S.D. Cal. Nov. 16, 2009).

7        Murphy has not provided any affidavits from knowledgeable parties, any supporting
8  case law, or any other competent indication that the materials were created "because of"
9  anticipated litigation and would not have otherwise been created, in substantially similar
10 form, in anticipation of settlement between the adverse parties in the Underlying Action.
11 *See 22.80 Acres of Land*, 107 F.R.D. at 22-26; *Bradfield v. Mid-Cont. Cas. Co.*,
12 15 F.Supp.3d 1253, 1256 (M.D. Fl. 2014) (finding party asserting privilege had not met
13 their burden of proof for privilege by only providing unsupported claim that the materials
14 were "[c]learly . . . privileged and work product."). As documents related to the *Damron*
15 settlement agreement, not made in anticipation of litigation, they would be discoverable.
16 *See Bd. of Trs. of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523
17 (C.D. Cal. 2008) (no federal privilege exists to prevent discovery of settlement agreements
18 and related documents); *see also Redding v. ProSight Specialty Mgmt. Co. Inc.*, No. CV12-
19 98-H-CCL, 2014 WL 11412743, at *6 (D. Mont. July 2, 2014); *Dietz & Watson, Inc. v.
20 Liberty Mut. Ins. Co.*, Civil Action No. 14-4082, 2015 WL 356949, at *8 (E.D. Penn.
21 Jan. 28, 2015) (settlement discussions and related communications between adverse parties
22 found to be discoverable by insurance company to show collusion between the two to
23 obtain payment from insurance company). This doubt regarding the actual purpose in
24 creating the Canty-related documents must be resolved against Murphy, as the party
25 asserting the privilege.

26       It is not necessary to consider Evanston's burden in proving any exception to work-
27 product protection—whether through waiver or otherwise—because Murphy has not met
28 their burden of proving that it is indeed work product. Conclusory statements of privilege,

without affidavits or other competent support, are not enough for the Court to find privilege. Thus, as a general matter, the Court finds that the subpoenaed documents are not work product and are discoverable by Evanston. But, as the Court recognizes, there may be privileged material within these documents. If Murphy believes that to be the case and wants to redact information, the documents will need to be submitted to the Court for an *in camera* review and determination.

### IV.  CONCLUSION

For these reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel Production of Documents Pursuant to Subpoena Served on Tolhurst International, LLC (Doc. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that if Murphy asserts privilege for any information contained in the discoverable material, the documents should be provided to the Court for an *in camera* review. For any such *in camera* submission, Murphy must state with specificity which items should be redacted and on what authority.

Dated this 31st day of July, 2020.

Michael T. Liburdi
United States District Judge