**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company, | No. CV-19-04954-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Tracey Portee Murphy, et al., | |
| Defendants. | |

Before the Court is the parties' Joint Summary of Discovery Dispute. (Doc. 83.) Defendant/Counter-Claimant Tracey Portee Murphy ("Murphy") seeks production of claim file documents that Plaintiff/Counter-Defendant Evanston Insurance Company ("Evanston") has redacted or withheld on attorney-client privilege and work-product grounds. The Court held a discovery dispute hearing on September 21, 2020, and directed the parties to file supplemental briefs, which the Court has now reviewed. (Doc. 91.)

**I.    BACKGROUND**

As has been previously noted, Raymond Canty ("Canty") d/b/a Soul Brothers Motorcycle Club purchased a commercial general liability policy, with a $2 million policy limit, from Evanston in anticipation of an annual fish fry event held on April 6-7, 2017. (Doc. 74 at 1.) Arthur Murphy, Jr. was shot and killed at the event. The family of the deceased filed a wrongful death lawsuit against Canty and other defendants in the Superior Court of Arizona for Maricopa County (the "Underlying Action"). *See Murphy v. Pearce Lincoln Props*., LLC, No. CV2019-001932 (Ariz. Super. Ct. July 1, 2020). Evanston

contends the policy excludes claims stemming from assault or battery. It denied coverage and declined to tender a defense for Canty, Soul Brothers, or any other insureds in the Underlying Action. Evanston then filed its Complaint for Declaratory Relief in this Court on August 13, 2019. (Doc. 1.) Defendants filed an Answer and Counterclaim on November 26, 2019, asserting claims for declaratory relief, breach of contract, and breach of the duty of good faith and fair dealing ("bad faith"). (Doc. 22.)

The parties filed a notice of the pending discovery dispute on September 11, 2020, in which Murphy objected to Evanston's redaction and withholding of various documents. Murphy objected to Evanston's assertions of (1) work-product protection over "non-lawyer claims managers or adjusters' notes"; (2) work-product protection and attorney-client privilege over communications between claims personnel and in-house counsel; (3) privilege over the premium paid, loss reserves set, and other "trade secret/proprietary privilege claims"; and (4) documents identified as misfiled and pertaining to other matters.[1] (Doc. 83 at 2-2.)

The Court held a discovery dispute hearing on September 21, 2020. It sustained Evanston's objections as to the disclosure of the "premium amounts paid for the policy and the loss reserves set in the Murphy claim." (Doc. 91 at 1.) The Court ordered supplemental briefing "on the issues of attorney-client and work-product privilege asserted by Evanston for claims personnel notes and communications between claims personnel and counsel prior to July 24, 2019." The parties were also ordered to address "the issue raised by Murphy's counsel concerning the Sanders & Parks law firm in the forthcoming supplemental briefing." (*Id.*) The parties submitted their opening briefs on September 28, 2020 (Docs. 93, 94), and response briefs on October 1, 2020. (Docs. 97, 98.) The briefing

---

[1] On that same day, the parties filed a second discovery dispute regarding Evanston's Second Amended Privilege Log. (Docs. 84, 83-1.) Murphy argued that "[b]y giving no description whatsoever in its privilege log as to the substance of the communications Evanston has waived privilege and all of the items must by produced." (*Id.* at 2.) Without holding oral argument, the Court "agree[d] with Defendants that many of the entries on Plaintiff's privilege log (Doc. 83-1) are insufficient." (Doc. 87 at 1.) It ordered Evanston to "submit a revised or augmented privilege log with enough information for each document or communication to allow Defendants and this Court to readily assess each claim of privilege." (*Id.* at 2.) Evanston has since produced a Third Amended Privilege Log, which is now the relevant privilege log for the pending dispute. (Doc. 93-1.)

includes the privilege log at issue (Evanston's Third Amended Privilege Log), which contains 14 pages of document descriptions that Evanston has either redacted or withheld. (Doc. 93-1.) Although the items are not numbered, upon review the privilege log appears to contain approximately 100 entries. Most of the entries are designated as subject to both the attorney-client privilege and the work-product doctrine.

## II.  DISCUSSION

The parties raise three primary issues: first, whether the relevant documents are protected by the attorney-client privilege; second, whether Evanston has impliedly waived that privilege; and third, whether the relevant documents are covered by the work-product protection. The Court will address these arguments in turn.

### A.  Attorney-Client Privilege

Evanston asserts that various documents described in the Third Amended Privilege Log are protected by the attorney-client privilege. Murphy argues that the attorney-client privilege does not apply to the relevant documents for various reasons, including that they do not include an attorney or do not contain legal advice, and that Evanston improperly asserted a "blanket" privilege. With the exception of one document, the Court agrees with Evanston.

Federal courts look to state law to determine the applicability of evidentiary privileges in diversity actions. *See* Fed. R. Evid. 501. Under Arizona law, "an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." A.R.S. § 12–2234(A). The party asserting the privilege has the burden of making a prima facie showing that it applies to a specific communication. *See State ex. rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976). The proponent must show that "1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Clements v. Bernini in & for Cty. of Pima*, 471 P.3d 645, 651 ¶ 8 (Ariz. 2020). A court has broad discretion in reviewing an assertion of privilege. *State*

*Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1174 (Ariz. 2000).

### 1. Specific Objections

Murphy first argues that various entries are not privileged because they do not include communications with counsel. As examples, Murphy points to two redacted entries described as, "Gleason file note re his thought process re consultation with counsel about the policy limit demand in anticipation of litigation" (EVAN00001) and "Gleason file notes re his communications with counsel about the law and facts pertaining to the policy exclusion in anticipation of litigation" (EVAN00002). Murphy also states that the documents numbered EVAN00011, 14, and 15 should be produced for the same reason. Evanston disagrees, stating, "[a]ny document that reflects or memorializes a confidential communication with counsel is protected against disclosure by the attorney-client privilege." (Doc. 97 at 6.) The Court agrees with Evanston that to require production of a claim adjuster's notes memorializing his consultation with counsel "would have the same inhibiting effect on the client as asking him directly to state what he told the attorney in confidence." *United States v. Motorola, Inc.*, No. Civ. 94–2331, 1999 WL 552553, at *5 (D.D.C. May 28, 1999); *see also In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *18 (S.D. Fla. Oct. 18, 2012) (employee's notes that "memorialized legal advice dispensed by Counsel to its client" were privileged and "no less protected than a letter from Counsel setting forth legal advice would be"). The Court has reviewed the relevant entries and concludes that these items are entitled to protection. Nonetheless, as described below, the privilege only applies to communications containing *legal advice*. Any portions of these five documents that do not contain legal advice must be produced in an unredacted form.

Murphy also argues that two entries do not involve communications securing or giving legal advice. Murphy first points to a July 15, 2019 entry stating, "Mason email from Christopherson re investigation by Attorney Leonhardt in anticipation of declaratory relief action." (Doc. 93 at 7; Doc. 93-1 at 5.) Murphy asserts that there is "no attorney involved in this discussion." (Doc. 93 at 7.) Upon review of the privilege log, the Court

finds that Evanston did not assert the attorney-client privilege in connection with this document. The Court will instead address it below in connection with the work-product protection.[2]

Murphy also points to a July 2, 2019 entry between claim adjuster Deborah Mason and "Attorney Hite" regarding "background of attorney to be considered as litigation counsel." (*Id.*; Doc. 93-1 at 4.) As noted, the attorney-client privilege applies "only to those communications involving legal advice." *Clements*, 471 P.3d at 651 ¶ 10. The attorney-client privilege does not extend to "the fact of the communication, the identity of the attorney, the subject discussed, and details of the meetings, which are not protected by the privilege." *United States v. Sanmina Corp.*, No. 18-17036, 2020 WL 4558285, at *11 (9th Cir. Aug. 7, 2020). Evanston does not address this specific document its response. The Court agrees with Murphy that, based on the information contained in the privilege log, this document does not appear to contain a privileged communication. Evanston will be required to produce this document.

**2.** ***In Camera* Review**

In addition to its specific objections, Murphy also argues that "Evanston generally asserts a blanket privilege over every communication to or from an attorney." (Doc. 92 at 8.) The Court does not have reason to believe that this is true. The fact that Evanston's privilege log identifies communications with attorneys does not indicate that Evanston has withheld *every* communication involving an attorney in its possession. Murphy argues that "the Court should review *in camera* all of those items for which Evanston is claiming privilege . . . to determine if they actually contain legal advice." (*Id.*) The Court will not do so at this time.

There is no dispute that a "party claiming the attorney-client privilege must make a prima facie showing supporting that claim." *Clements*, 471 P.3d at 649 ¶ 1. A privilege log containing the following information is sufficient to establish this prima facie showing:

---

[2] Evanston also asserts the "common interest privilege" in connection with this document. (Doc. 93-1 at 5.) Given that Murphy has not objected on these grounds, the Court will not address this argument.

- 5 -

"(1) the author(s); (2) the nature or type of document; (3) the names of all individuals who were shown, sent, received, or informed of the substance of the document; (4) the date of the document; and (5) the subject matter of the document." *MJG Enters., Inc. v. Cloyd*, No. 2:10-cv-00086-TMB, 2012 WL 12964345, at *2 (D. Ariz. Oct. 30, 2012). The Court previously agreed with Murphy that "many of the entries" on Evanston's Second Amended Privilege Log were insufficient. (Doc. 87 at 1.) Evanston has now submitted a Third Amended Privilege Log which, upon review by the Court, generally contains adequate information and establishes Evanston's prima facie showing. (Doc. 93-1.)

In light of this prima facie showing, the Court will not conduct an *in camera* review of every item identified as attorney-client privileged at this time. A party requesting *in camera* review must show "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). Murphy's allegation of a "blanket privilege" assertion does not meet this standard. *See Reynolds v. Liberty Mut. Ins. Co.*, No. CV-16-00020-TUC-JGZ, 2017 WL 6415360, at *4 (D. Ariz. May 23, 2017) (denying *in camera* review where the party "failed to make the requisite factual showing, instead hinging his argument on a hunch"). Further, "generally an attorney's representation to the court that a communication was made to secure or provide legal advice is entitled to substantial weight." *Clements*, 471 P.3d at 651 ¶ 10.

Accordingly, other than the July 2, 2019 email identified above, Evanston is entitled to withhold (or redact) those items designated as attorney-client privileged on its Third Amended Privilege Log.

**B.     Implied Waiver of Attorney-Client Privilege**

To the extent the attorney-client privilege applies, Murphy also argues that Evanston has waived it as to communications regarding the assault and battery exclusion. The attorney-client privilege "may be deemed waived when application of the privilege would deny an opposing party access to necessary information to counter a claim or defense asserted by the other party." *Everest Indem. Ins. Co. v. Rea*, 342 P.3d 417, 418 (Ariz. Ct.

App. 2015). Arizona courts have adopted the "*Hearn*" test, under which three criteria must be met to find an implied waiver of the attorney-client privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Lee*, 199 Ariz. at 57 ¶ 10 (*citing Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)). For the following reasons, the Court concludes that Evanston has not impliedly waived the attorney-client privilege.

Murphy relies on *Lee*, 199 Ariz. 52, in which the Arizona Supreme Court held that "where . . . an insurer makes factual representations which implicitly rely upon legal advice as justification for non-payment of claims, the insurer cannot shield itself from disclosure of the complete advice of counsel relevant to the handling of the claim." *Id*. at 61 ¶ 23 (citing *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 259–60 (Del.1995)). The court emphasized that "[o]ur ruling does not create a rule of per se waiver of the attorney-client privilege in insurance bad faith cases." *Id*. Murphy argues that if Evanston "had merely denied bad faith and defended on an objective basis, without advancing its agents' subjective understanding of the law," it would not have waived the privilege. (Doc. 93 at 9 (quoting *Lee*, 199 Ariz. at 62 ¶ 29).) But, Murphy states, "that is not what Evanston is doing in this case." (*Id*.) Murphy points to its own counterclaim for insurance bad faith and, citing the relevant Revised Arizona Jury Instruction, states, "[t]hus what Evanston did as far as investigating the underlying claim and coverage issue, whether Evanston gave as much consideration to its insureds' own interests as its own, and what it *knew* at the time it denied the claim for defense" are the elements of the bad faith counterclaim. (Doc. 93 at 10.)

The Court notes that Murphy's bad faith claim against Evanston is not, in itself, sufficient to establish waiver of the privilege. As the *Lee* court stated, implied waiver

existed because "[b]y asserting the subjective evaluation and understanding of its personnel about the state of the law on stacking, [the insurer] has affirmatively injected the legal knowledge of its claims managers into the litigation and put the extent, and thus the sources, of this legal knowledge at issue." *Lee*, 199 Ariz. at 65 ¶ 34. *See also Safety Dynamics Inc. v. Gen. Star Indem. Co.*, No. CV-09-00695-TUC-CKJ, 2014 WL 11281391, at *1 (D. Ariz. Mar. 25, 2014) ("[T]he party asserting privilege has not waived it unless it has interjected the issue of advice of counsel into the litigation by asserting some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes information that it received from counsel."). Defending a bad faith claim does not, without more, rise to this standard.

Murphy cites to two ways in which Evanston purportedly inserted its legal knowledge into this case. First, in a Joint Summary of Discovery Dispute Re: Evanston Insurance 30(b)(6) Deposition (filed after the pending discovery dispute but before the supplemental briefing), Evanston stated, "courts in Arizona and elsewhere have found *as a matter of law* that the assault and battery exclusion is enforceable." (Doc. 89 at 3) (emphasis in original). Evanston cited cases including *Tucker v. Scottsdale Indem. Co.*, 2010 WL 5313753 (Ariz. App. Dec. 10, 2010). Murphy asserts that "Evanston and its non-attorney claims personnel could not have understood that *Tucker* and other cases purported to provide support for its position 'as a matter of law' without advice from counsel." (Doc. 93 at 10.) Further, Murphy argues, this statement "certainly opens up discovery into what Evanston's in-house and outside coverage lawyers were telling Evanston about the viability of its assault and battery exclusion under Arizona law." (*Id.*)

The Court does not agree. As Evanston notes in its response brief, it did not assert a reliance on advice of counsel in its complaint, answer to Murphy's counterclaim, or MIDP disclosures. (Doc. 94.) The citation to legal authorities in a discovery dispute does not assert this reliance. To waive the attorney-client privilege, a "party must do more than simply confer with counsel and take action incorporating counsel's advice." *Everest Indem. Ins. Co.*, 342 P.3d at 419. If the Court were to take Murphy's argument to its logical

conclusion, Evanston would never be permitted to cite to legal authority in connection with the assault and battery exclusion without waiving the attorney-client privilege. Further, in its response brief, Evanston stated that it cited *Tucker* because it recently obtained a legal memorandum from Murphy's counsel citing to the case; accordingly, Evanston states that the *Tucker* case is relevant "because it reflects the thinking and the strategy of the *attorney* (Mr. Combs) who wrote . . . the *Damron* Agreement and the Declaration of Raymond Canty." (*Id.*) (emphasis in original). For all of these reasons, the Court finds that Evanston did not waive the attorney-client privilege through this discovery dispute notification.

Second, Murphy argues that Evanston waived the privilege by asserting that the reasonable expectations doctrine does not apply in this case. (Doc. 93 at 11.) Murphy cites to the parties' Rule 26(f) Case Management Report, in which Evanston stated that it "denies that the reasonable expectations doctrine is applicable in this case." (Doc. 27 at 4.) Murphy asks, "how could Evanston's claims personnel make an objectively reasonable decision to deny coverage in light of the Arizona reasonable expectations doctrine without relying on advice of counsel?" (Doc. 93 at 11.) That question need not be answered today. What is relevant is that the Rule 26(f) Case Management Report does not reference Evanston's reliance on advice of counsel. Evanston's assertion of a legal position that it will take in this case is not equivalent to asserting its "agents' subjective understanding of the law." *Lee*, 199 Ariz. at 56 ¶ 8.

The Court accordingly finds that Evanston has not waived the attorney-client privilege at this time. Should circumstances change, Murphy is free to reassert this argument at a later time.

C.     **Work-Product Doctrine**

Evanston also argues that it has properly withheld various documents under the work-product doctrine. As the Court has found that most of the documents contained in the Third Amended Privilege Log are protected by the attorney-client privilege, only a limited number of documents remain at issue. They include a May 22, 2018 entry titled "Mason

file notes re loss reserves"[3] (EVAN00007); a June 7, 2019 entry titled "Mason file notes re opinion regarding coverage for additional insureds in light of threat of Damron Agreement and potential bad faith argument" (EVAN00007-8); and a July 15, 2019 entry titled "Mason email from Christopherson re investigation by Attorney Leonhardt in anticipation of declaratory relief action" (no Bates number). As discussed below, the Court agrees with Murphy that the first two documents are not work-product protected; it will require Evanston to submit the third document for *in camera* review.

As the work product doctrine is a limitation on discovery, and not an evidentiary privilege, federal law governs its application. *See City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV-12-380-PHX-BSB, 2013 WL 1797308, at *11 (D. Ariz. Apr. 29, 2013). The work-product doctrine protects from discovery documents and tangible things that are prepared by or for a party or its representative "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). In circumstances where a document serves a dual purpose, "that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011). Dual-purpose documents are deemed prepared "because of" litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907. The party invoking work-product protection bears the burden of proof. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 728 (9th Cir. 1982).

Documents "prepared as part of insurance claim investigations 'are generally not considered work product due to the industry's need to investigate claims.'" *Labertew v. Chartis Prop. Cas. Co.*, 2018 WL 1876901, *2 (D. Ariz. April 19, 2018) (quoting *Moe v. Sys. Transport, Inc.*, 270 F.R.D. 613, 624 (D. Mont. 2010)). The insurer's activity shifts from an act taken in the ordinary course of business to the anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of the prospect of*

---

[3] This document is also labeled as "Proprietary," "Trade Secrets," and "Relevance." As the parties did not address these purported privileges, the Court will not, either.

*litigation.*" *Labertew*, 2018 WL 1876901 at *2 (citing *Moe*, 270 F.R.D. at 624). To satisfy the "because of" standard, Evanston must, for each document, identify a "'critical factor' which made it anticipate litigation." *Id.* at *2. Documents are not work product simply because "litigation is in the air or there is a remote possibility of some future litigation." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 635 (D. Nev. 2013) (citation and quotations omitted).

Murphy first argues that the documents are not protected because the work-product protection "does not apply to claim file documents until the carrier formally denies coverage."[4] (Doc. 93 at 2.) Evanston issued its formal coverage denial on July 24, 2019. Murphy therefore states that "Evanston's claims file and other internal documents" dated before prior to this date are not protected by the work-product doctrine. (*Id.* at 4.) Evanston responds that the work-product doctrine applies to those documents dated on or after June 28, 2019—the date on which its claims handler *decided* to file a complaint for declaratory relief. (Doc. 94 at 9.)

First, the Court agrees with Murphy that the documents dated May 22, 2018, and June 7, 2019, are not protected by the work-product doctrine. As Murphy notes, "Evanston concedes that it did not decide to pursue this litigation until June 28, 2019 . . . [t]hus it is indisputable that all items and evidence in the claims file for which Evanston is asserting work product prior to that date were primarily if not entirely created in the normal course of Evanston's business[.]" (Doc. 93 at 4.) Seeing no other argument from Evanston in support of work-product protection for those documents, the Court will order their production. *See Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D. Ariz. 2001) ("The burden of establishing protection of alleged work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion.").

As to the July 15, 2019 email—the one document dated between the parties'

---

[4] For clarity, the Court notes that Murphy argues that numerous documents in the Third Amended Privilege Log are not subject to the work-product protection. However, because the Court has determined that nearly all of these documents are protected by the attorney-client privilege, it addresses only the three remaining documents.

asserted work-product cutoff dates—the Court is unable to determine, from the material provided, whether it is subject to work-product protection. Both parties rely on *Labertew*, 2018 WL 1876901. In that case, the court stated that where "an insurer has not yet formally denied a claim, the insurer 'bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate." *Id*. at *2. The insurer issued a coverage denial on February 13. The insurer argued, however, that the work-product protection attached earlier than the coverage denial because "the prospect of not accepting the tender of defense became evident a few weeks earlier." *Id*. The court rejected this argument, finding that the record demonstrated that "the coverage decision was still under consideration after the purported January 22 'critical factor' date." *Id*. The court accordingly concluded that the work-product protection did not apply prior to the February 13 coverage denial because the insurer "presented no specific evidence showing 'a resolve to litigate' the coverage issue before formally denying the claim." *Id*.

Evanston argues that it met its burden of proving that on June 28, 2019, its claim handler, Deborah Mason, decided to file the declaratory relief complaint and to retain Arizona counsel to draft it. Evanston has submitted Ms. Mason's declaration, which states that "[o]n June 28, 2019, I made the decision, subject to the approval of my manager, to decline the claim and to retain counsel and file a complaint for declaratory relief[.]" (Doc. 94-1 ¶ 6.) Ms. Mason further states that "I obtained confidential legal advice from in-house counsel with regard to this decision, but I independently made the declination decision and did not rely on counsel's advice. Like the original declination of coverage, I made the decision, not based on an analysis of the law, but based on the policy exclusion for assault and battery and the facts presented."[5] (*Id*.) Accordingly, Murphy argues that documents prepared after June 18, 2019 were prepared in anticipation of litigation and therefore subject to work-product protection.

The Court agrees with Murphy that here, as in *Labertew*, "the contemporaneous,

---

[5] Evanston also attached a Declaration of Russell Dennis to the notice of discovery dispute. (Doc. 83.) Mr. Dennis is the Director-Claims of Markel Service, Inc., which serves as the claim servicing agent for Evanston. Mr. Dennis also asserts that Ms. Mason decided to retain counsel and to file a declaratory relief action on June 28, 2019. (Doc. 83-2 at 3.)

- 12 -

objective evidence" indicates that the coverage decision was not entirely finalized on the date of Ms. Mason's purported coverage decision. For example, Ms. Mason's declaration states that her June 28, 2019 decision was "subject to the approval of [her] manager." (Doc. 94-1 ¶ 6.) As Murphy points out, the declaration does not "identify[] who that manager was or when that manager ultimately 'approved' her decision." (Doc. 98 at 8.) And on July 9, attorney Shanks Leonhardt of the Sanders & Parks law firm emailed Ms. Mason regarding "status of analysis of coverage." (*Id*. at 5.) On July 19, 2019, Mr. Leonhardt also emailed Ms. Mason regarding "analysis of Evanston master policy and Canty's member policy." (*Id*. at 6.) This information indicates that "the coverage decision was still under consideration" following Ms. Mason's purported June 28, 2019 decision date. *Labertew*, 2018 WL 1876901, at *2.

Nonetheless, it may be the case that individual documents dated between the June 28 coverage "determination" and the July 24 denial letter were prepared in anticipation of litigation. *See Henderson v. Metro. Prop. & Cas. Ins. Co*., No. C09-1723 RAJ, 2010 WL 5394912, at *2 (W.D. Wash. Dec. 22, 2010) ("It may well be the case that some of the documents on the privilege log are work product . . . it is possible that [the insurer] prepared some documents in anticipation of litigation, perhaps even some of the documents on its privilege log."). Indeed, the Court is aware that the privilege log entry specifically states that the document was prepared "in anticipation of litigation." (Doc. 93-1 at 5.) Further, the Court notes that even if it was prepared in anticipation of litigation, Evanston must also demonstrate that each document "would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d at 908 (emphasis added). It is conceivable that the "investigation" at issue may have occurred in the normal claim adjustment process, independent of the pending declaratory judgment action. The Court will review the document *in camera* to resolve these issues.

Murphy also "concedes" that any documents dated after declaratory relief complaint presumably relate to this lawsuit. But, for documents prepared between July 24 and August 24, 2019—the dates of Evanston's coverage denial and complaint, respectively—

"Evanston should document them in a privilege log and produce them for *in camera* review." (Doc. 93 at 6.) Because the Court has already determined that these items are protected by the attorney-client privilege, the Court will not conduct *in camera* review of the post-July 24, 2019 documents at this time.

### D. Misfiled Documents

In the notice of discovery dispute, Murphy objected to Evanston's withholding of the documents marked as "misfiled" and relating to another case (EVAN00013, 78, 120). Murphy stated, only, that the withholding "seems questionable" and that the documents could be "unredacted without harm to any third party if they are unrelated." (Doc. 83 at 3.) The parties did not address these documents in their supplemental briefing. Seeing no further argument, and recognizing that an "attorney has a duty of good faith and candor in dealing with the judiciary," the Court accepts Evanston's position that the documents were misfiled, relate to another matter, and are not relevant here. *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985). It will not order their production.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Murphy's request for the documents in Evanston's Third Amended Privilege Log (Doc. 93-1) is **granted** to the extent that Evanston must produce the July 2, 2019 email between Ms. Mason and "Attorney Hite" regarding "background of attorney to be considered as litigation counsel" (no Bates number), as well as the file notes dated May 22, 2018 (EVAN00007) and June 7, 2019 (EVAN00007-8), in accordance with this Order, no later than **12:00 PM on October 16, 2020**. Evanston must also produce any portions of EVAN00001, 2, 6, 11, 14, and 15 that do not contain legal advice by the same time.

**IT IS FURTHER ORDERED** that Evanston must produce the July 15, 2019 communication titled "Mason email from Christopherson re investigation by Attorney Leonhardt in anticipation of declaratory relief action" (no Bates number) for the Court to

review *in camera* by no later than **12:00 PM on October 16, 2020**.

**IT IS FURTHER ORDERED** denying Murphy's request in all other respects.

**IT IS FINALLY ORDERED** that Evanston shall file a notice with the Court complying with the terms of this Order.

Dated this 13th day of October, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge