WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company, | No. CV-19-04954-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Tracey Portee Murphy, et al., | |
| Defendants. | |

Before the Court is the Motion for Protective Order filed by non-party Ryan McCarthy. (Doc. 112.) For the following reasons, the motion is granted in part and denied in part.[1]

I.   **BACKGROUND**

As relevant to the pending motion,[2] non-party Ryan McCarthy is an attorney at the law firm Jones, Skelton & Hochuli, PLC. He defended Pearce Lincoln Properties LLC ("Pearce Lincoln"), Par-Tech Limited Partnership ("Par-Tech"), and Art's Fisheries II, LLC ("Arts Fisheries"), in connection with the underlying wrongful death matter in the Superior Court of Arizona for Maricopa County (the "Underlying Action"). *See Murphy v. Pearce Lincoln Props*., LLC, No. CV2019-001932 (Ariz. Super. Ct. July 1, 2020). Mr.

---

[1] Mr. McCarthy requested oral argument. Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

[2] The Court has previously provided general background information on this case. (*See* Docs. 74, 100.) It need not repeat the same here.

McCarthy's clients owned and operated the property at which Arthur Murphy, Jr. was fatally shot on April 6, 2017. An associate attorney, Sam Arrowsmith, who is no longer affiliated with Jones, Skelton & Hochuli, was also counsel to these entities.

Plaintiff/Counter-Defendant Evanston Insurance Company ("Evanston") filed its complaint for declaratory relief in the present action on August 13, 2019. (Doc. 1.) It initially named Mr. McCarthy's clients as defendants; they have since been dismissed. (Doc. 47.)

On November 25, 2019, the adverse parties in the Underlying Action entered into a *Damron* agreement.[3] It assigned a $9 million stipulated judgment against the insureds, including Mr. McCarthy's clients, to Tracee Portee Murphy ("Murphy"), a defendant and counter-claimant in the present action.

Evanston issued a subpoena for Mr. McCarthy's deposition on July 17, 2020. (Doc. 72.) On July 31, Mr. McCarthy's counsel sent a letter to Evanston's counsel asserting, in part, that they had not received the deposition "topics, questions, or subject matter." (Doc. 112-1 at 7.) Mr. McCarthy's counsel intended "to object to any line of questioning that seeks to violate the attorney-client privilege, work-product privilege, or ER 1.6, Arizona Rules of Professional Conduct." (*Id.*) On August 20, Evanston's counsel sent an outline of anticipated deposition topics. Counsel also met and conferred that same day. (*Id.* at 12.)

Evanston's counsel deposed Mr. McCarthy on September 14, 2020. Although Mr. McCarthy answered multiple questions during the deposition, his counsel asserted privilege objections in response to 19 questions. Those objections are the subject of the

---

[3] Under Arizona law, a *Damron* agreement is a "settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured. In such an agreement, the insured agrees to liability for the underlying incident and assigns all rights against the insurance company to the injured party." *Quihuis v. State Farm Mut. Auto Ins. Co.*, 748 F.3d 911, 912 n. 1 (9th Cir. 2014). *Damron* agreements do not "create coverage that the insured did not purchase. . .To the contrary, [the insurer] is liable for the stipulated judgment only if the judgment constituted a liability falling within its policy." *Colorado Casualty Ins. Co. v. Safety Control Co.*, 230 Ariz. 560, 567, 288 P.3d 764, 771 (Ct. App. 2012) (internal quotations and citations omitted)."

1  present motion. Following the deposition, Evanston's counsel asserted that the privilege
2  objections were improper. (Doc. 112 at 6.)  The parties have since conferred "multiple
3  times." (*Id.*)
4      Mr. McCarthy filed the present motion on October 30, 2020. (Doc. 112.) He
5  attached, as Exhibit 10 to the motion, a numbered list of the 19 questions to which his
6  counsel asserted privilege objections. (Doc. 112-1 at 63.) The motion is now fully briefed.
7  (Docs. 121, 125.)  Murphy also filed a joinder in support of the motion. (Doc. 118.)

8  **II.    LEGAL STANDARD**

9      Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties
10 by subpoena. Rule 45 provides, in relevant part, that a party may command a non-party to
11 testify at a deposition. Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery "through a
12 subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)."
13 *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217
14 (N.D. Cal. 2015). Under Rule 26(b), a party may obtain discovery "regarding any
15 nonprivileged matter that is relevant to any party's claim or defense and proportional to the
16 needs of the case considering the importance of the issues at stake in the action, the amount
17 in controversy, the parties' relative access to relevant information, the parties' resources,
18 the importance of the discovery in resolving the issues, and whether the burden or expense
19 of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The
20 limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-parties. *See*
21 *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D.
22 Cal. 2014).

23     A district court has "broad discretion" to permit or deny discovery. *Hallett v.*
24 *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "discovery process in theory should be
25 cooperative and largely unsupervised by the district court." *Sali v. Corona Reg. Med. Ctr.*,
26 884 F.3d 1218, 1219 (9th Cir. 2018). Nonetheless, a party from whom discovery is sought
27 may move for a protective order to prevent annoyance, embarrassment, oppression, or
28 undue burden or expense. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order

bears the burden of persuasion to show "good cause" for its issuance. *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

### III.   DISCUSSION

Mr. McCarthy moves for a protective order shielding himself, and all other attorneys and staff associated with Jones, Skelton & Hochuli, from attempts to gather privileged information. As noted, he has provided 19 deposition questions to which his counsel objected on the basis of the attorney-client privilege and work-product doctrine. (Doc. 112 at 8; 112-1 at 64-68.) Evanston responds that Mr. McCarthy should be required to answer the questions for various reasons. The Court addresses these arguments in turn.

### A.   Attorney-Client Privilege

Mr. McCarthy identifies five deposition questions—designated as numbers 5, 6, 9, 10, and 16—to which his counsel asserted an attorney-client privilege objection. Evanston responds that the objections "at dispute were pursuant to the work-product doctrine, not attorney-client privilege. Accordingly, only the protections of the work-product doctrine will be discussed here."[4] (Doc. 121 at 2-3.) This is not accurate.

As identified in his motion, Mr. McCarthy's counsel invoked the attorney-client privilege in the following portions of his deposition:

> Q: And were you -- did you have information that Art's Fisheries had done business with Soul Brothers for a number of years involving prior events?
> MR. RAPPAZZO: I'm just going to object there real quick. Gary, if you are asking about attorney-client privileged information or communications he had with his client, I'm going to instruct him not to respond. Maybe you can rephrase it.
> . . .

---

[4] The Court notes that Evanston provided a copy of the deposition transcript as Exhibit A to its response. Evanston's response states that "[f]or the Court's convenience, all 18 of the work-product objections interposed by McCarthy's counsel have been highlighted in yellow in the attached Exhibit A." (Doc. 121 at 2.) Only some of the questions identified by Mr. McCarthy are highlighted. This is Mr. McCarthy's motion, and the Court will address the questions he has raised.

- 4 -

> Q: Okay. We will get to that. . . . All right. Let me -- so a couple of other general questions. So you were ultimately retained to represent the three defendants: Art's Fisheries, Pearce Lincoln, and Par-Tech. And my question is, did you obtain a written waiver of any conflict or potential conflict from them?
> MR. RAPPAZZO: I'm gonna object to the extent that's calling for communications he had with his clients, Gary. It's privileged.
> MR. HAMBLET: It's not. A waiver of a conflict, I don't think that's privileged.
> MR. RAPPAZZO: It's attorney-client communication.
> . . .
>
> Q: Was Deans & Homer or -- or Indian Harbor Insurance Company a client of yours?
> MR. RAPPAZZO: That's attorney-client privilege. It's a duty of confidentiality, Gary. I'm sorry, he can't respond to that.
> . . .
>
> Q: And the first one is that defendants failed to provide metal detectors or security staff to arriving guests for weapons or other threats. Did you have any information in your file one way or another as to whether that was true?
> MR. RAPPAZZO: I'm just going to object to the extent it's calling for attorney-client privilege communications that he may have had with his clients.
> . . .
>
> Q: Okay. Why not just try the case or settle the case within your 9 million policy limits?
> MR. RAPPAZZO: Form and foundation. You are asking for attorney-client potentially and work product privilege response there.

(Doc. 121-1 at 65-67.[5]) These responses invoke the attorney-client privilege. Mr. McCarthy emphasizes in his reply that because Evanston did not address the attorney-client privilege argument, it has waived any objection. (Doc. 125 at 2-3.) *See* LRCiv 7.2(i); *E.E.O.C. v. Walgreen Co.*, No. CIV 05-1400 PCTFJM, 2007 WL 926914, at *1 n.2 (D. Ariz. Mar. 26,

---

[5] These questions were labeled as numbers 5, 6, 9, 10, and 16 in Exhibit 10 to Mr. McCarthy's motion, respectively.

- 5 -

2007) (deeming plaintiff's failure to respond to an argument as consent to the granting of a motion on this ground). The Court agrees that Evanston failed to address this argument. Nonetheless, the Court will consider whether Mr. McCarthy's counsel properly raised the attorney-client privilege objection before issuing a protective order.

Federal courts look to state law to determine the applicability of evidentiary privileges in diversity actions. *See* Fed. R. Evid. 501. Under Arizona law, "an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." A.R.S. § 12–2234(A). The party asserting the privilege has the burden of making a prima facie showing that it applies to a specific communication. *See State ex. rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976). The proponent must show that "1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Clements v. Bernini in & for Cty. of Pima*, 471 P.3d 645, 651 ¶ 8 (Ariz. 2020). A court has broad discretion in reviewing an assertion of privilege. *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1174 (Ariz. 2000).

First, the Court notes that the objections at issue were procedurally proper. Rule 30(c)(2) permits objections, "whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition." Fed. R. Civ. P. 30(c)(2). Such objection "must be stated concisely in a nonargumentative and nonsuggestive matter." *Id*. Further, a "person may instruct a deponent not to answer only when necessary to preserve a privilege. . ." *Id*. A review of the deposition transcript indicates no procedural issues with Mr. McCarthy's counsel's objections.

The Court now turns to the merits of the objections. Mr. McCarthy has demonstrated the existence of an attorney-client relationship with Pearce Lincoln, Par-Tech, and Art's Fisheries. Mr. McCarthy represented these entities at the time of his deposition and "continues to represent them" at present. (Doc. 112 at 3.) He "has not, at any point, had consent to discuss any privileged topics and/or to respond to any of the questions that drew

privilege objections during his deposition." (*Id*. at 9.) Further, Mr. McCarthy has asserted that the topics at issue involved communications that were "performed confidentially, with an expectation of confidentiality, and without disclosure to third parties (such as Evanston)."[6] (Doc. 112 at 10.) The Court agrees, generally, that the topics at issue would invoke privileged communications. For example, the answer to the question, "Why not just try the case or settle the case within your 9 million policy limits?" would conceivably entail attorney-client privileged communications and strategies. (Doc. 112-1 at 67.)

The Court finds one exception. Mr. McCarthy's counsel objected to what is identified as question 9: "Was Deans & Homer or -- or Indian Harbor Insurance Company a client of yours?" (Doc. 112-1 at 66.) Generally, the "identity of an attorney's client" and the nature of the fee arrangement between an attorney and his client are not privileged. *In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986), opinion corrected, 817 F.2d 64 (9th Cir. 1987). Mr. McCarthy provides no reason to stray from this general rule. Accordingly, the Court finds that Mr. McCarthy's counsel properly objected to four questions (numbers 5, 6, 10, and 16) because their answers would involve attorney-client privileged material. Question number 9, regarding whether "Deans & Homer" or "Indian Harbor Insurance Company" were clients, did not involve privileged material.[7]

B.   **Work-Product Doctrine**

Mr. McCarthy argues that the remaining questions at issue—designated as numbers 1–4, 7, 8, 11–15, and 17–19—are protected by the work-product doctrine. Evanston argues that "an attorney's thought processes regarding a settlement agreement are not work

---

[6] In addition to A.R.S. § 12–2234(A), Rule 1.6(a) of the Arizona Rules of Professional Conduct states that a "lawyer shall not reveal information relating to the representation of the client unless the client gives informed consent. . . ."

[7] Question 6 involved whether Mr. McCarthy obtained a conflict waiver as to his three clients. Evanston's counsel asserted during the deposition that this was not a privileged communication. The attorney-client privilege and conflicts of interest are "distinct [rules] and regulate different ethical principles." *Ragasa v. Cty. of Kauai*, No. CV 14-00309 DKW-KJM, 2016 WL 11597768, at *8 (D. Haw. July 6, 2016). Seeing no further argument from Evanston, and the possibility that this question would involve privileged material, the Court will grant a protective order as to question 6.

- 7 -

product," that the protection has been waived, and that the need for the information outweighs the protection. (Doc. 121 at 2.) The Court agrees with Evanston that the questions at issue do not involve protectable work product.

Federal law governs the application of the work-product doctrine, which protects from discovery documents and tangible things that are prepared by or for a party or its representative "in anticipation of litigation." *See City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV-12-380-PHX-BSB, 2013 WL 1797308, at *11 (D. Ariz. Apr. 29, 2013); Fed. R. Civ. P. 26(b)(3)(A). The party invoking work-product protection bears the burden of proof. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 728 (9th Cir. 1982).

In the context of depositions, "the work product doctrine operates in a very limited way." *Schreib v. Am. Family Mut. Ins. Co.*, 304 F.R.D. 282, 287 (W.D. Wash. 2014) (quotations and citation omitted). It specifically "protects against questions which improperly tend to elicit the mental impressions of the parties' attorneys." *Id*. Courts have "consistently held" that the work product doctrine does not shield from deposition "the facts that the adverse party's lawyer has learned, or the person from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." *Pastrana v. Local 9509, Commc'ns Workers of Am.*, AFL–CIO, No. CIV. 06CV1779 W AJB, 2007 WL 2900477, at *5 (S.D. Cal. Sept. 28, 2007) (citation omitted).

**1. Relevance**

Mr. McCarthy first argues that questions regarding his evaluation of the Underlying Action have "no relevance to the pending coverage action" under Rule 26(b)(1). (Doc. 12 at 19.) He states that his "evaluation and personal view of 'reasonableness' as it relates to the value of the wrongful death claims for a spouse and eleven children are irrelevant to the pending coverage dispute." (*Id*.) The Court notes that this argument is not necessarily related to whether protectable work product exists, but will address it nonetheless.

Rule 26(b) is "liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Bible v. Rio Properties,*

*Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007) (citation omitted). "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir. 2005) (citation omitted). Evanston has taken the position in this case that the *Damron* agreement was fraudulent and "collusive because McCarthy elected to 'lie down' instead of mounting a defense." (Doc. 121 at 7; *see also* Doc. 26 at 8; Doc. 69 at 5.) The Court finds that the questions to which Mr. McCarty's counsel objected on work-product grounds—including, for example, "You weren't concerned that you didn't want to be seen as approving the form of this [*Damron*] agreement?"—could possibly lead to the discovery of admissible evidence. The Court will not issue a protective order on grounds that the remaining questions are irrelevant to this case. *See Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290 RJB, 2010 WL 11561789, at *3 (W.D. Wash. Jan. 21, 2010) (permitting a line of questioning in a deposition because it was "arguably relevant and should be allowed under the broad scope of discovery").

### 2.  Applicability

In its response, Evanston argues that Mr. McCarthy's motion "fails to address the application of the work-product doctrine to the material at hand." (Doc. 121 at 2.) The Court largely agrees. Mr. McCarthy's motion does state that the "questions that drew objections during McCarty's deposition targeted information that is at the heart of McCarthy's litigation strategy. The questions pertain to both the [Underlying Matter] and the pending federal litigation initiated by Evanston." (Doc. 112 at 11.) Nonetheless, the Court is not convinced that Mr. McCarthy has met his burden to prove that the work-product protection applies to the questions at issue. *Conoco Inc.*, 687 F.2d at 728.

Although neither party addresses this argument, the Ninth Circuit has held that Rule 26(b)(3), "on its face, limits its protection to one who is a party . . . to the litigation in which the discovery is sought." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). *See also* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another*

*party or its representative*") (emphasis added); C. Wright & A. Miller, Federal Practice and Procedure § 2024 (3d ed.) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."). Neither Mr. McCarthy nor his clients are parties to the present suit.[8] For this independent reason, the Court will not grant a protective order as to the purportedly work-product protected information. *See Loustalet v. Refco, Inc.*, 154 F.R.D. 243, 247 (C.D. Cal. 1993) ("Because Wymer is not a party to the present suit, documents prepared on his behalf are wholly unprotected despite the fact that he was a party in closely related lawsuits.").

The Court also finds that Mr. McCarthy has not demonstrated that the underlying materials were prepared or obtained *because of* the prospect of litigation. As noted, the work-product protection applies to those documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). In circumstances in which a document serves more than one purpose, "that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011). Dual-purpose documents are deemed prepared "because of" litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted). Here, Evanston argues that Mr. McCarthy's "opinions and thought processes leading to a settlement agreement, in this case a *Damron* Agreement, cannot logically qualify as 'trial preparation materials.'" (Doc. 121 at 3.)

The Court recently addressed a similar issue in this case. Evanston previously moved the Court to compel the production of documents subpoenaed from an investigator, Keith Tolhurst, and his firm. *Evanston Ins. Co. v. Murphy*, No. CV-19-04954-PHX-MTL,

---

[8] As noted, although Pearce Lincoln, Par-Tech, and Art's Fisheries were previously parties to the present case, they were dismissed on April 15, 2020. (Doc. 47.) This was five months before Mr. McCarthy's September 14, 2020 deposition.

2020 WL 4429022 (D. Ariz. July 31, 2020); (Doc. 69). Murphy's counsel had hired Mr. Tolhurst to locate Mr. Canty "in order to negotiate a *Damron* agreement between the adverse parties in the Underlying Action." *Id.* at *1. Murphy argued, in response, that the material was shielded from discovery as protectable work product. The Court agreed with Evanston, concluding, "[a]s documents related to the *Damron* settlement agreement, not made in anticipation of litigation, they would be discoverable." *Id*. at *3; Doc. 74 at 5.

The same is true here. Although Mr. McCarthy asserts that Evanston seeks his "case evaluations, litigation strategy, [and] motivations," (Doc. 112 at 11), he has not demonstrated that the questions at issue relate to documents that "can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907 (emphasis added). A number of the deposition questions directly relate to the *Damron* agreement and resulting stipulated judgment. As examples, Evanston's counsel asked Mr. McCarthy, "And what's the basis for your agreeing that [the stipulated judgment] was fair and reasonable?" and "[D]id you consider that sufficient information to evaluate whether $9 million was a reasonable amount?" (Doc. 121-1 at 68.) There "is no federal privilege preventing the discovery of settlement agreements and related documents." *Board of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008). *See also Redding v. ProSight Specialty Mgmt. Co., Inc.*, No. CV 12-98-H-CCL, 2014 WL 11412743, at *6 (D. Mont. July 2, 2014) ("Furthermore, the Court doubts whether this document was prepared in anticipation of litigation or for trial, since it clearly was prepared in anticipation of settlement."). Accordingly, for all of these reasons, Mr. McCarthy has not met his burden to demonstrate that the questions at issue involve protectable work product.

### 3. Other Arguments

The parties also dispute whether Mr. McCarthy waived the work-product doctrine. Because Mr. McCarthy has not met his burden to prove that the testimony at issue involves work-product protected material, it is not necessary to consider Evanston's "burden in proving any exception to work-product protection—whether through waiver or

otherwise—because [Mr. McCarthy] has not met [his] burden of proving that it is indeed work product." *Evanston Ins. Co.*, 2020 WL 4429022, at *3. Thus, the Court will not grant a protective order as to the questions objected to on the basis of the work-product doctrine.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED granting** the Motion for Protective Order by Non-Party Attorney Ryan McCarthy (Doc. 112) to the extent that the attorney-client privilege objections raised during Mr. McCarthy's deposition to questions 5, 6, 10, and 16 (Doc. 112-1 at 65-68) are sustained. Ryan McCarthy, Sam Arrowsmith, and any attorneys or staff affiliated with Jones, Skelton & Hochuli, PLC shall not be required to respond to these questions in any form.

**IT IS FURTHER ORDERED denying** the Motion in all other respects.

Dated this 23rd day of November, 2020.

Michael T. Liburdi
United States District Judge