Lincoln Combs, Esq. – State Bar #025080
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
(602) 252-8888
(602) 274-1209 FAX
lcombs@vanosteen.com

Shannon Clark – State Bar #019708
Katherine Krukowski – State Bar #034824
**GALLAGHER & KENNEDY, P.A.**
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000
(602) 530-8500 FAX
slc@gknet.com
kate.krukowski@gknet.com
*Attorneys for Defendant/Counter-Claimant*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company, | No. 2:19-CV-4954-MTL |
| Plaintiffs, | |
| v. | **DEFENDANT/COUNTER-CLAIMANT'S MOTION TO STRIKE REPORT OF SCOTT SALMON** |
| Tracee Portee Murphy, Pearce Lincoln Properties, LLC, Par-Tech LP, Arts Fisheries II, LLLC, Raymond Canty dba Soul Brothers; John Doe and Jane Doe 1-5; | **Oral Argument Requested** |
| Defendants. | (Assigned to the Hon. Michael Liburdi) |
| Tracee Portee Murphy, | |
| Counter-Claimant, | |
| v. | |
| Evanston Insurance, | |
| Counter-defendant. | |

Evanston Insurance Company served—days after Murphy filed her Cross-Motion for Partial Summary Judgment on Fraud and on the very same day she opposed Evanston's Motion for Summary Judgment—an "expert" report from retired attorney Scott Salmon relating to the issues of fraud and collusion, central issues in both dispositive motions. This report was served long after the deadline set by the Court for service of full and complete expert disclosures. This expert disclosure is both untimely and prejudicial to Murphy and should be stricken pursuant to Local Rule 7.2(m) (allowing submissions not authorized by court order to be stricken). In the alternative, Murphy requests leave to supplement the record on the cross motions for summary judgment with the Report of Myles Hassett attached as **Exhibit A.**

## I.      BACKGROUND

Fact discovery in this case closed on December 15, 2020. Dkt. 96 at 2. The Court's initial Scheduling Order stated "[t]he party with the burden of proof on an issue shall provide full and complete expert disclosures, as required by Rule 26(a)(2)(A)–(C) of the Federal Rules of Civil Procedure, no later than November 16, 2020." Dkt 53 at 3. This Order was later amended such that the initial expert disclosures for parties with the burden of proof were due on January 15, 2021. Dkt. 96 at 3. Evanston served no expert disclosures by January 15, 2021. Nor did it request an extension from Murphy or the Court.

On February 22, 2021, Evanston served a report from retired attorney Scott Salmon. The Salmon report expresses Mr. Salmon's opinions that the conduct of attorneys Ryan McCarthy, Lincoln Combs, and Matthew Leathers was fraudulent and collusive in negotiating and executing the subject *Damron* agreement.

## II.      ARGUMENT

The Court should strike the Salmon report for three reasons. First, the Salmon report is untimely. Second, the Salmon report—considering that it was disclosed after Murphy filed her Cross-Motion for Partial Summary Judgment on Fraud (February 12, 2021) and on the same day Murphy opposed Evanston's Motion for Summary Judgment (February 22, 2021)—is highly prejudicial to Murphy. Finally, the Salmon report is effectively a claim

2

against licensed professionals (three of them, to be exact), and Evanston failed to follow the required statutory protocol for such claims. *See* A.R.S. §§ 12-2601 *et seq*.

> **1. Evanston Has the Burden of Proof to Show Fraud and Collusion by Clear and Convincing Evidence.**

Evanston has asserted as an affirmative defense to the *Damron* agreement in this case that it is the product of fraud or collusion. *See* Evanston Answer to Complaint and Counterclaim, Dkt. 26, at 8:18–21 (asserting as affirmative defense that counterclaims are barred based on fraud or collusion). The "proponent of an affirmative defense bears the burden of pleading and proving it." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C*., 213 Ariz. 83, 89, ¶ 21 (App. 2006) (citing Ariz. R. Civ. P. 8(c), 12(h); *Double AA Builders, Ltd. v. Grand State Constr., LLC*, 210 Ariz. 503, 510, ¶ 34 (App. 2005).

Evanston may argue based upon dicta in *Facciola v. Greenberg Traurig, LLP* that it is Murphy's burden to show the *absence* of fraud or collusion. 2011 WL 13086914 at *2 (D. Ariz. 2011) (citing *Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 21 (2004) ("Plaintiffs also bear the burden of showing that the stipulated judgment, pursuant to the *Damron* Agreement was not fraudulent or collusive."). However, this stray comment was not necessary to the district court's holding. Further, it is simply an incorrect statement of the law. Specifically, the district court in *Facciola* cited to *Parking Concepts*, which is an Arizona Supreme Court case addressing *Morris* agreements, and applied the rules analyzed there to a *Damron* agreement. But *Morris* is very different than a *Damron* situation, as the court in *Parking Concepts* instructed. *Parking Concepts*, 207 Ariz. at n.1, n.3. Unfortunately, the *Facciola* court conflated the two distinct bodies of law, citing a *Morris* rule for a *Damron* situation and ultimately incorrectly stating the law.

In a *Damron* case, the insurer has very limited rights because the insurer in *Damron* circumstances has not only denied coverage in full to its insured, but it has also refused to provide a defense, leaving the insured to fend for itself. *Damron v. Sledge*, 105 Ariz. 151, 153 (1969). In a *Morris* case, the insurer defends under a reservation of rights. *Parking Concepts*, 207 Ariz. at n.1 (describing *Morris* agreements).

3

Arizona law treats insurers who abandon their insureds more harshly than insurers who defend under a reservation of rights, limiting the insurers' ability to attack a *Damron* agreement to situations where it can demonstrate that it is the product of fraud or collusion. *See Parking Concepts*, 207 Ariz. at 22, n.3 (citing *Damron*, 105 Ariz. at 153) ("In contrast, in cases where the insurer has refused to defend and the parties enter into a *Damron* agreement, the insurer has no right to contest the stipulated damages on the basis of reasonableness, but rather may contest the settlement only for fraud or collusion."). A *Morris* agreement is a different animal. In *Morris*, the court recognized that although an insurer's decision to defend under a reservation of rights placed an insured in precarious position, an insurer with a good-faith coverage defense may appropriately perform its contractual duty to defend while reserving the right to later assert the defense. *Id.* at ¶ 12 *Morris* attempted to resolve the conflicting interests of an insured and an insurer when the insurer has reserved its right to deny coverage via a reservation of rights letter. As then Justice Hurwitz observed, according to *Morris*, the insurer, even where it does not lift its reservation of rights, enjoys more rights. For instance, it is entitled to notice and the carrier remains free to attack both the amount of damages as well as analyze liability defenses, putting the onus on the insured to show that the settlement was reasonable and prudent, as well as being free of fraud and collusion.

Not so in the *Damron* context. In a *Damron* scenario, the insurer has not provided any defense, forcing insureds to fend for themselves. The court in *Damron* held that where an insurer refuses to defend at all, it must accept the risk of an unduly large verdict and the only means for an insurer to attack a *Damron* agreement are to prove that the agreement itself was the product of fraud or collusion. *See Parking Concepts*, 207 Ariz. at 22, n.3; *see also Damron*, 105 Ariz. at 153. Notably, no Arizona appellate court has ever imposed on an assignee under a *Damron* agreement the burden of disproving an insurer's "fraud and

4

collusion" affirmative defense.[1]

In this case, Evanston denied coverage without issuing a reservation of rights letter. Thus, this is squarely a case covered by *Damron* and not *Morris*, and thus Evanston has the burden of proving—by clear and convincing evidence—its affirmative defense that the *Damron* agreement was reached through fraud or collusion.

Because Evanston was the party with the burden of proof on its affirmative attack on the *Damron* agreement, it was required to serve any expert opinions on this issue no later than January 15, 2021. *See* Dkt. 96 at 3. The Salmon report on the issue of fraud or collusion was served on February 22, 2021, over 30 days later.

**2.     Evanston's Tardy Disclosure Was Prejudicial to Murphy.**

Murphy has been prejudiced by Evanston's failure to timely produce its expert report. Murphy filed her Cross-Motion for Partial Summary Judgment re "Fraud or Collusion" on February 12, 2021, and her Response in Opposition to Evanston's Motion for Summary Judgment on February 22, 2021—the same day the Salmon report was served. Murphy cross-moved for partial summary judgment based upon the absence of evidence of cognizable fraud or collusion in this case and the tardy production of this expert opinions prevented Murphy from engaging and producing her own expert report to counter Salmon's opinions. For example, Evanston included the Salmon report as additional authority for its response to Murphy's Cross-Motion for Partial Summary Judgment. This is highly

---

[1]     Courts from other jurisdictions have held that an insurer who fails to provide a defense to its insureds bears the burden of showing that a *Damron*-type agreement was fraudulent or collusive. *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1268 (D. Nev. 2015) ("The insurer who breached its duty to defend bears the burden of showing by a preponderance of the evidence that the agreement was fraudulent or collusive. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 123 (Colo. 2010) (characterizing the issue of collusion as an affirmative defense for the insurer to raise and prove); *Pruyn v. Agric. Ins. Co.*, 36 Cal. App. 4th 500, 530, 42 Cal. Rptr. 2d 295 (1995) ("It is sound and rational to conclude that the burden of showing that the settlement does not reflect the fact and amount of the insured's liability should fall upon the insurer whose breach has occasioned the settlement." (quotation and emphasis omitted)).

5

prejudicial to Murphy because it required Murphy to retain her own expert on these issues and—more importantly—Murphy is not permitted to append evidence to a reply in support of a dispositive motion. *See* Dkt. 53 at 5:27–28 ("No evidence may be submitted with a reply."). Thus, while Murphy has a rebuttal witness who demonstrates the various means in which Mr. Salmon's report is in error, *see* Expert Disclosure of Myles Hassett, Exhibit A, this would be "new evidence" that Murphy may not use in connection with her Reply Brief on the Cross-Motion for Partial Summary Judgment or her response to Evanston's motion for summary judgment on fraud and collusion.

> **3.** **The Salmon Report Should Also Be Stricken for Failure to Comply Because These Are Claims Against Licensed Professionals.**

Evanston was required to comply with A.R.S. §§ 12-2601 *et seq*. This statutory scheme requires that a party levying a claim against a licensed professional to follow procedural protections for licensed professionals accused of professional misconduct. Salmon's attack on the lawyers in this case is undoubtedly a claim against licensed professionals. *See* A.R.S. § 12-2601(3) (*Licensed professional* means a person, corporation, professional corporation, partnership, limited liability company, limited liability partnership or other entity that is licensed by this state to practice a profession or occupation under title 20 or 32 or that is admitted to the state bar) (emphasis added).

Any party asserting a claim against a licensed professional in a litigated matter in Arizona is required to have an attorney certify whether expert testimony is required to prove such claims. *See* A.R.S. § 12-2602(A). Evanston failed to provide the required attorney's certification. In addition, when expert testimony is required, a party levying a claim against a licensed professional is also required to provide a preliminary expert affidavit with initial disclosures outlining the qualifications of the expert to express an opinion on the professionals' conduct, the factual basis for each claim, the professionals' acts, errors or omissions that are a violation of the applicable standard of care and how those acts or omissions caused or contributed to the damages in the matter. *See* A.R.S. § 12-2602(B).

1  Evanston failed to provide such a preliminary expert affidavit.[2]

2      This statutory scheme is not perfunctory. Cases can be dismissed for failing to

3  comply with it. *See, e.g.*, A.R.S. § 12-2602(F). These are significant protections the

4  legislature has afforded to licensed professionals in Arizona so that their reputations and

5  integrity cannot be blithely criticized. In addition, it provides advanced notice that such

6  claims are being asserted so that the licensed professional accused of misconduct can be

7  prepared to assemble evidence necessary in defense of such claims. Evanston denied

8  Murphy this opportunity and failed to comply with the requisite statutory scheme for

9  criticizing licensed professional attorneys.

10      **4.      In the Alternative, the Court Should Permit Murphy to Supplement
11            Her Reply in Support of Her Motion for Partial Summary Judgment.**

12      Should the Court decline to strike Mr. Salmon's report, Murphy respectfully

13  requests, in the interest of fairness, that she be permitted to file a one-page supplemental

14  brief relating to the fraud and collusion claims at issue in Evanston's Motion for Summary

15  Judgment and Murphy's Cross-Motion for Partial Summary Judgment attaching the

16  Hassett Report (Exhibit A) and briefly explaining its relevance to Murphy's arguments.

17  **III.  <u>CONCLUSION</u>**

18      For all these reasons, the report of the expert opinions of Scott Salmon should be

19  stricken. In the event the Court denies this motion, Murphy respectfully requests that she

20  be permitted to file a one-page supplement to the dispositive motion briefing attaching the

21  Hassett report (Exhibit A here) and explaining its relevance.

22

23

24

25

26

27

28

---

[2]Murphy reserves her right to challenge Mr. Salmon's opinions on Rule 702/*Daubert* grounds in the event that this Motion is denied.

7

1

2      RESPECTFULLY SUBMITTED this 25th day of March, 2021.

3

4                                        By:/s/ C. Lincoln Combs
                                             Shannon L. Clark
5                                            Katherine Krukowski
6                                            **GALLAGHER & KENNEDY, P.A.**
                                             2575 East Camelback Road
7                                            Phoenix, Arizona 85016-9225

8
                                             C. Lincoln Combs, Esq.
9                                            **O'STEEN & HARRISON, PLC**
                                             300 W. Clarendon Ave., Suite 400
10                                           Phoenix, Arizona 85013-3424
                                             *Attorneys for Defendant/Counter-*
11                                           *claimant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing on all CM/ECF registrants.

                              /s/ *C. Lincoln Combs*
                              C. Lincoln Combs

9