**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company, | No. CV-19-04954-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Tracey Portee Murphy, et al., | |
| Defendants. | |

Before the Court are the parties' cross-motions for summary judgment. As described in this Order, Plaintiff/Counter-Defendant Evanston Insurance Company's ("Evanston") motion for summary judgment is granted. (Doc. 154.) Defendant/Counter-Claimant Tracey Portee Murphy's ("Mrs. Murphy") motion for partial summary judgment is denied as moot. (Doc. 161.)[1]

**I.     BACKGROUND**

Mrs. Murphy is the surviving spouse of Arthur Murphy, Jr. Back in April 2017, Mr. Murphy attended a fish fry sponsored by Soul Brothers Motorcycle Club ("Soul Brothers"). Mr. Murphy was shot and killed at that event. Evanston issued the commercial general liability insurance policy to Soul Brothers.

Raymond Canty, a non-party to this case, is Soul Brothers' business manager. He bought the insurance policy at issue on Soul Brothers' behalf. The fish fry took place at a

---

[1] Both parties have submitted legal memoranda, and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

parking lot in downtown Phoenix, Arizona. (Doc. 166-2 at 10.) The parking lot is owned by Pearce Lincoln Properties, LLC ("Pearce Lincoln") and Par-Tech LP ("Par-Tech"), which leased the lot to Art's Fisheries II.[2] (*Id*. at 61.) Mr. Canty obtained a sublease from Art's Fisheries II to use the parking lot for the fish fry. (*Id*. at 18, 64.)

The sublease agreement required Soul Brothers to "provide [a] certificate of liability insurance for not less than $2,000,000.00 two million dollars." (*Id*. at 64.) To satisfy this requirement, Mr. Canty used a website, EventHelper.com, to search for and obtain liability insurance. EventHelper.com, a non-party to this case, is a "retail agent" that sells insurance policies issued by Evanston and another insurer. (Doc. 154-3 at 7.) Mr. Canty stated in his deposition that he searched online for insurance vendors; the EventHelper.com name stood out to Mr. Canty because he was preparing for an "event." (Doc. 166-2 at 11.)

Mr. Canty applied for the Evanston policy at issue via an online portal. (*Id*. at 66.) He testified that he spent "less than 30 minutes" filling out the application form. (*Id*. at 11.) Evanston then issued Commercial General Liability Insurance Policy No. 3DS5455-M1613065 to "Soul Brothers/Raymond Canty" for a policy period of April 6–9, 2017.[3] (Doc. 154-4 at 7–17.)

Mr. Murphy's death occurred during the overnight hours on April 6–7. Several months later, Mr. Murphy's surviving family sent a demand letter to Pearce Lincoln and Par-Tech for their "collective insurance policy limits as full and final settlement of this claim." (Doc. 166-3 at 31–41.) Those entities tendered the claim to Evanston. (*Id*. at 43.) Evanston denied coverage on grounds that an assault and battery exclusion in the policy precluded coverage. (*Id.* at 48.)

Mr. Murphy's family then filed a wrongful death lawsuit against Mr. Canty doing business as ("dba") Soul Brothers, Pearce Lincoln, Par-Tech, and other defendants in the

---

[2] Mr. Canty, Pearce Lincoln Properties, LLC, and Par-Tech LP were formerly defendants here but have since been dismissed. (Docs. 47, 50.)
[3] The record contains two policy numbers: No. 3DS5455-M1613065, and No. 3DS5466-M1613065. (*Compare* Doc. 154-4 at 14, *with* Doc. 154-5 at 36.) There is no indication that there are two policies at-issue in this matter. Accordingly, the Court attributes the differing policy numbers to typographical error.

Superior Court of Arizona for Maricopa County (the "Underlying Action"). *See Murphy v. Pearce Lincoln Props., LLC*, No. CV2019-001932 (Ariz. Super. Ct. July 1, 2020). Defendants' counsel tendered the complaint to Evanston. (Doc. 166-3 at 81.)

In a July 24, 2019 letter, Evanston denied coverage and declined to defend any of the insureds because of the assault and battery exclusion. (Doc. 166-3 at 94.) Evanston asserted, "Decedent's shooting death constitutes an 'injury' arising out of 'assault or battery' because Plaintiffs allege that an unknown invitee at the Event fired a semiautomatic weapon at Decedent and striking him three times—resulting in Decedent's death." (*Id*. at 98.)

Following its coverage denial, Evanston filed its Complaint for Declaratory Relief in this Court. (Doc. 1.) In it, Evanston "seeks a declaratory judgment under 28 U.S.C. § 2201 *et seq.* that a commercial general liability policy issued by Evanston to [Mr. Canty] provides no coverage for the claims and damages" in the Underlying Action. (*Id*. ¶ 1.)

After the filing here, the adverse parties in the Underlying Action entered into a *Damron* agreement.[4] It assigned a $9 million stipulated judgment against the insureds, including Mr. Canty dba Soul Brothers, Pearce Lincoln, and Par-Tech, to Mrs. Murphy (and Mr. Murphy's other statutory beneficiaries). (Doc. 166-4 at 54–71.) The next day and following the assignment of such claims under the *Damron* agreement, Mrs. Murphy filed an Answer and Counterclaim in this case. She claimed declaratory relief, breach of contract, and breach of the duty of good faith and fair dealing.[5] (Doc. 22 at 7–8.) Under the

---

[4] Under Arizona law, a *Damron* agreement is a "settlement agreement between an insured and an injured party in circumstances where the insurer has declined to defend a suit against the insured. In such an agreement, the insured agrees to liability for the underlying incident and assigns all rights against the insurance company to the injured party." *Quihuis v. State Farm Mut. Auto Ins. Co.*, 748 F.3d 911, 912 n.1 (9th Cir. 2014). *Damron* agreements do not "create coverage that the insured did not purchase . . . . To the contrary, [the insurer] is liable for the stipulated judgment only if the judgment constituted a liability falling within its policy." *Colo. Cas. Ins. Co. v. Safety Control Co.*, 230 Ariz. 560, 567 (App. 2012) (internal quotations and citations omitted).

[5] Besides Mrs. Murphy, Mr. Murphy's other beneficiaries—Cherelle Murphy, Arthur Murphy, Latoya Murphy, Adrione Murphy, Eugene Scott, Juwan Murphy, Jacori Murphy, Alijah Murphy, Sedale Portee, and Ricky Taylor—were also previously defendants here,

*Damron* agreement, the Superior Court entered a $9 million judgment against the defendants in the Underlying Action, terminating that case. (Doc. 166-4 at 73.)

Evanston has since filed a motion for summary judgment on its Complaint for Declaratory Relief and on all counterclaims asserted by Mrs. Murphy. (Doc. 154.) Mrs. Murphy has also filed a motion for partial summary judgment "on Evanston's 'fraud or collusion' defense to her counterclaims." (Doc. 161 at 2.) Both motions are ripe for ruling.[6] (Docs. 166, 168, 170, 171, 174.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

## III. DISCUSSION

### A. Evanston's Motion for Summary Judgment (Doc. 154)

Evanston argues that it is entitled to summary judgment because the assault and battery exclusion in the policy at issue excludes coverage as a matter of law. (Doc. 154 at 9.) Alternatively, Evanston argues that it is entitled to summary judgment because the *Damron* agreement, "upon which the counterclaim is predicated, was procured by fraud

---

as were Pearce Lincoln, Par-Tech, Art's Fisheries, and Mr. Canty. At the time of filing this Order, Mrs. Murphy is now the only remaining defendant.

[6] The parties have also moved to strike expert reports. (Docs. 173, 182, 186.) The Court does not address the substance of those motions in this order.

and/or collusion." (*Id.* at 14.) The assault and battery exclusion presents the dispositive issue.

### 1. Applicability of Assault and Battery Exclusion

The interpretation of an insurance contract is a question of law.[7] *See Wilshire Ins. Co. v. S.A.,* 224 Ariz. 97, 99 (App. 2010). An insurance policy "must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross*, 130 Ariz. 160, 163 (App. 1981) (citation omitted). Courts interpret insurance policies according to their plain and ordinary meaning. *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.,* 225 Ariz. 194, 200 (App. 2010). The insured has the burden of establishing coverage under an insuring clause. *Keggi v. Northbrook Prop. & Cas. Ins. Co.,* 199 Ariz. 43, 46 (App. 2000). The insurer has the burden of proving the applicability of any exclusion. *Id.*

The policy contains an exclusion labeled "EXCLUSION—ASSAULT OR BATTERY" in large print at the top of the page (the "assault and battery exclusion"). (Doc. 154-4 at 12.) The top of that page also states, in capital letters, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." (*Id.*) The exclusion states, in part:

> This insurance does not apply to:
>
> **Assault or Battery**
> "Injury" arising out of "assault or battery", or any act or omission in connection with the prevention or suppression of "assault or battery", whether caused by or at the instigation or direction of:
> **(1)** Any insured;
> **(2)** Any "employee" of the insured;
> **(3)** A patron of the insured; or
> **(4)** Any other person.
> This exclusion applies even if the claims against any insured alleged negligence or other wrongdoing in the supervision, hiring, employment, training, monitoring of others, or failure

---

[7] The parties agree that Arizona law applies to this case. *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207 (1992).

- 5 -

> to protect or warn others, by a person described in Paragraphs **(1)** through **(4)** above.

(*Id.*) Evanston argues that a "shooting death is unquestionably an assault and a battery" and thus the policy excludes Mrs. Murphy's claims.[8] (Doc. 154 at 9.)

The Court agrees with Evanston that, on its face, the shooting death of Mr. Murphy falls within the assault and battery exclusion. *See Fall v. First Mercury Ins. Co.*, 225 F. Supp. 3d 842, 847 (D. Ariz. 2016) ("Because the event giving rise to the underlying litigation is an alleged assault and battery, the plain language of the Policy's exclusion precludes coverage for all of Plaintiff's underlying claims, including his claims for negligent training and supervision."). Indeed, Mrs. Murphy does not dispute as much in either her response to Evanston's motion or her own motion for partial summary judgment. (Docs. 161, 166.) The Court therefore finds that Evanston has met its burden to prove that the assault and battery exclusion, on its face, excludes coverage arising from the shooting death of Mr. Murphy.

### 2. Reasonable Expectations

That finding does not end the inquiry. The parties dispute whether the reasonable expectations doctrine precludes enforcement of the assault and battery exclusion. In *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383 (1984), the Arizona Supreme Court recognized the "reasonable expectations" rule of contract interpretation under Restatement (Second) of Contracts § 211. Under this doctrine, Arizona courts look not only to the terms of standardized insurance agreements, but also to the parties' reasonable expectations of coverage:

---

[8] "Assault or battery" is defined in the policy as "[a]ny attempt or threat to inflict 'injury' to another person or the property of another person including any conduct or action that would reasonably place such person in apprehension of such 'injury'" or "[t]he intentional or reckless physical contact with or any use of force against a person without his or her consent that results in 'injury' or offensive or abusive touching, whether or not the actual 'injury' inflicted was intended or expected. The use of force includes, but is not limited to, the use of a weapon." (Doc. 154-4 at 12.)

> Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation . . . [An insured] who adheres to the [insurer's] standard terms does not assent to a term if the [insurer] has reason to believe that the [insured] would not have accepted the agreement if he had known that the agreement contained the particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction.

*Id.* at 391–92 (citing Restatement (Second) of Contracts § 211 cmt. f). The doctrine protects parties to standardized insurance contracts against overreaching by "hold[ing] the drafter to good faith and terms which are conscionable." *Id.* at 394. The *Darner* court emphasized that, "[o]f course, if not put in proper perspective, the reasonable expectations concept is quite troublesome, since most insureds develop a 'reasonable expectation' that every loss will be covered by their policy." *Id.* at 390. The reasonable expectations doctrine therefore "must be limited by something more than the fervent hope usually engendered by loss." *Id.*

Not long after *Darner*, the Arizona Supreme Court, in *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266 (1987), identified a "*limited* variety of situations" in which Arizona courts "will not enforce even unambiguous boilerplate terms in standardized insurance contracts":

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of

> coverage in the mind of a reasonable insured;
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Id.* at 272–73 (emphasis in original) (citations omitted). The parties agree that *Gordinier* provides the proper test for assessing the reasonable expectations doctrine in this case. (Doc. 166 at 13.) They disagree on its application, to which the Court now turns.

### a. Reasonably Intelligent Consumer

The parties dispute the applicability of the first *Gordinier* situation, in which the "contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights." 154 Ariz. at 272. Evanston argues that, if a reasonably intelligent person read the policy issued to Mr. Canty, "that person would immediately know—without even reading beyond the caption—that neither assault . . . nor battery . . . are covered." (Doc. 154 at 12–13.) Mrs. Murphy responds that Evanston "buried" the exclusion "near the end of a 115-page document," and that nothing in the policy "draws attention to the assault and battery exclusion out of the dozens of other endorsements and exclusions." (Doc. 166 at 15.)

The first *Gordinier* situation assumes that the reader reviewed the provision at issue. *See Viking Ins. Co. of Wis. v. Link*, No. 1 CA-CV 16-0646, 2018 WL 4691016, at *4 (Ariz. Ct. App. Sept. 27, 2018). The Court agrees with Evanston that the exclusion is unambiguous and comprehensible by a reasonably intelligent consumer. Indeed, in reviewing a substantially similar exclusion, this court previously noted that the "words 'assault,' 'battery,' and 'arising out of' are commonly used and widely understood. They are not ambiguous." *Fall*, 225 F. Supp. 3d at 847. The Court finds that a reasonably intelligent consumer who "might check on his or her rights" would understand that the policy excluded coverage for an injury arising out of an assault or battery. *See Tucker v. Scottsdale Indem. Co.*, No. 1 CA-CV 09-0732, 2010 WL 5313753, at *3 (Ariz. Ct. App. Dec. 21, 2010) (enforcing an assault and battery exclusion; "Appellants' contention that

Richardson was unaware of this exclusion and 'still did not understand' the exclusion after reading it does not create an ambiguity because the terms of the assault and battery exclusion are clear and unambiguous."). The Court will not nullify the assault and battery exclusion on this basis.

### b. Full and Adequate Notice

Second, the parties dispute whether Mr. Canty received "full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage." *Gordinier*, 154 Ariz. at 273. The parties first disagree as to whether Mr. Canty had notice of the assault and battery exclusion. Evanston, for its part, points to notifications on the EventHelper.com website that Mr. Canty necessarily reviewed in purchasing the policy. For example, Evanston attaches as Exhibit 7 to its motion a screenshot of the Terms & Conditions to which Mr. Canty confirmed his assent. The policy's Terms & Conditions section contains the following conformation paragraph:

> I/We confirm that we understand that your Athletic / Sporting Participants, Performers/Crew/Stunts, Firearms, Auto Exposures, Animal Exposures, Unmanned Aircraft & explosives and Assault & Battery are Excluded from this Policy.

(Doc. 154-3 at 35.) Evanston states that Mr. Canty "could not move to the next step in the [online] application process without checking the box" showing that he agreed with the Terms & Conditions. (Doc. 154 at 13.) The same assertion also appears on the "Proposal & Application" form prepared by Mr. Canty. (Doc. 154-4 at 2–3.)

The Court has considered Mrs. Murphy's argument that the "clear meaning of this impenetrable language is impossible to decipher." (Doc. 166 at 17.) This sentence could have been drafted with more clarity. Even so, the Court agrees with Evanston that the language itself would put a reasonable reader on notice that the policy excludes injuries arising from conduct defined as "Assault & Battery."

Mrs. Murphy also argues that, together with its substance, the purported notice is "not clearly called out, written in 'very small print' among a page of legal boilerplate, and

subject to multiple interpretations." (*Id*.) The Court does not agree that this is an instance in which "the adhering party never had an opportunity to read the term, or [that] it is illegible or otherwise hidden from view." *Darner Motor Sales, Inc.*, 140 Ariz. at 392. Reference to the assault and battery exclusion is not "hidden" from either the two-page Proposal & Application form or the EventHelper.com Terms & Conditions. In both documents, the term appears to be in the same size font as the rest of the text and is not otherwise obscured from view. (Doc. 154-3 at 35; Doc. 154-4 at 2–3.)

Mrs. Murphy also points to Mr. Canty's own testimony that he did not know about the assault and battery exclusion. When asked what he believed to constitute the insurance policy he bought, Mr. Canty testified, "[b]asically, for me, just whether or not it's covered; price. I mean I've never gotten into the particulars of what it covered. If I purchased auto insurance, I just got full coverage. What it covered, I couldn't tell you. What I believe is full coverage. Full coverage is full coverage." (Doc. 166-2 at 29.) And when presented with the disclosure at his deposition, Mr. Canty stated, "I probably wouldn't even have read that just for the fact that, once again, we've had this for prior years, never had a problem before; so it was never on the radar to be a problem." (*Id.* at 33.) These statements appear to indicate that, despite affirming the Terms & Conditions during the online application process, Mr. Canty was not aware of the assault and battery exclusion.

Ultimately, the Court need not resolve the notice issue. This second *Gordinier* test requires notice *and* that the provision be "unusual or unexpected, or one that emasculates apparent coverage." *Gordinier*, 154 Ariz. at 273. The Court will not nullify the assault and battery exclusion because it was neither "unusual or unexpected," nor one that "emasculates apparent coverage." *Id*. "[A]ssault and battery exclusions are not uncommon" in liability insurance policies. *Tucker*, 2010 WL 5313753, at *5; *see also Penn-Am. Ins. Co. v. Boys & Girls Club of Rutland Cnty., Inc.*, No. 1:02CV129, 2005 WL 8154697, at *2 (D. Vt. Oct. 17, 2005) (referencing a "standard 'Assault and Battery Exclusion'"); *Law & Prac. of Ins. Coverage Litig*. § 6:21 (2020) ("It is not uncommon . . . for commercial liability policies to contain a separate exclusion from coverage for claims of assault and

battery."). In this sense, the exclusion does not fit into the category of unusual or unexpected.

The assault and battery exclusion, also, does not emasculate apparent coverage. Mrs. Murphy argues, without support, that "the assault and battery exclusion turned the Policy into a $2,000,000 slip-and-fall policy." (Doc. 166 at 18.) She also states, again without support, that "[n]o purchaser of insurance who was aware of the actual extremely limited coverage afforded by the Policy would purchase $2,000,000 in coverage, and by offering such a high limits policy Evanston is implicitly representing that it applies to a wider range of injury claims than just premises liability." (Doc. 166 at 18.) These assertions are not convincing. Mrs. Murphy "does not . . . point to any term in the policy that is inconsistent with the [exclusion] at issue." *Mt. Hawley Ins. Co. v. Total Bldg. Sys., Inc.*, No. CV-06-2473-PCT-NVW, 2008 WL 2757076, at *7 (D. Ariz. July 14, 2008). Further, during his deposition, counsel asked Mr. Canty, "If you had known that the policy would not cover a shooting, would you have purchased the policy?" (Doc. 154-2 at 11.) Mr. Canty responded, "Probably so." (*Id.*) These facts show that the assault and battery exclusion did not emasculate apparent coverage. *Gordinier*, 154 Ariz. at 273.

Mrs. Murphy also points to Mr. Canty's testimony in which he stated that he believed he was purchasing "full coverage." (Doc. 166-2 at 29.) But in the same response, as noted, Mr. Canty stated, "I mean I've never gotten into the particulars of what it covered. If I purchased auto insurance, I just got full coverage. What it covered, I couldn't tell you." (*Id.*) To satisfy the reasonable expectations doctrine, an insured's expectation must arise from "a promise or assurance from the insurer which is contrary to the express terms of the policy." *Mt. Hawley Ins. Co.*, 2008 WL 2757076 at *8. Neither Mrs. Murphy in her briefing, nor Mr. Canty in his testimony, point to any such promise or assurance. The insured must establish more than a "fervent hope" of coverage. *Darner Motor Sales*, 140 Ariz. at 395. The Court finds that Mr. Canty's belief of "full coverage" amounts to such a "fervent hope," but he has otherwise "failed to show that the [exclusion] was unusual or unexpected, or one that emasculated apparent coverage." *Nelson v. Navigator Ins. Co.*, 624

F. App'x 599, 600 (9th Cir. 2015). The Court will not nullify the assault and battery exclusion under the second *Gordinier* situation.

      **c.**  **Activity Reasonably Attributable to Insurer**

  The third and fourth *Gordinier* categories require "some activity which can be reasonably attributed to the insurer" that either creates an objective impression of coverage or leads a person to reasonably believe that coverage exists. *Gordinier*, 154 Ariz. at 273. Mrs. Murphy has alleged no such activity. She points to the fact that the EventHelper.com website, through which Mr. Canty bought the policy, promotes "superior coverage." (Doc. 166 at 19.) Mrs. Murphy offers no support for the position that such a general marketing statement—i.e., puffery—creates an objective impression or reasonable belief that the policy would cover damages arising from assault and battery. Further, Mrs. Murphy asserts that EventHelper.com's website, rather than Evanston itself, promoted "superior coverage." The "impression or expectation of coverage must be based on actions reasonably attributable to the insurer, not the non-agent broker through which the insured procured the [policy]." *Colony Ins. Co. v. Est. of Anderson ex rel. Johnson*, No. 1 CA-CV 14-0819, 2016 WL 796983, at *6 (Ariz. Ct. App. Mar. 1, 2016) (emphasis omitted). Mrs. Murphy has not made such a showing as to the statement on EventHelper.com's website.

  Mrs. Murphy also argues that Evanston created the impression of coverage when it "buried the assault and battery exclusion in over 100 pages of policy documents." (Doc. 166 at 19.) The Court does not believe this to be the type of underhanded activity that the Arizona Supreme Court envisioned in *Gordinier*. Courts have found actionable activity to exist when, for example, an insurer continued to sell rental car insurance coverage to an insured after learning about his arrest for driving under the influence, *Philadelphia Indemnity Insurance Co. v. Barerra*, 200 Ariz. 9, 18 (2001), or for charging a certain premium after auditing the insured at its corporate headquarters, *St. Paul Fire & Marine Insurance Co. v. Ohio Casualty Insurance Co.*, No. CV-11-1954-PHX-SMM, 2014 WL 1285824, at *12 (D. Ariz. Mar. 28, 2014). Indeed, the Arizona Supreme Court has found that an insurer's investigation of the insured, plus its suggestion that purchasers buy

a certain policy, did *not* amount to such activity. *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 401 (2008). Mrs. Murphy has provided no authority suggesting that the length of an insurance policy amounts to an "activity" creating an impression of coverage, and the Court has not located as much.

Ultimately, Mrs. Murphy has "not produced evidence such that a reasonable jury could return a verdict for [her] under any of the four strands of the *Gordinier* reasonable expectations doctrine." *Kruger v. USAA Cas. Ins. Co.*, No. CV-11-113-PHX-GMS, 2012 WL 443715, at *5 (D. Ariz. Feb. 13, 2012) (quotations omitted). She has not established that Mr. Canty had a reasonable expectation of coverage for damages resulting from an assault or battery. As a result, the Court finds that Evanston did not err in denying coverage because of the policy's assault and battery exclusion. Evanston is therefore entitled to summary judgment on its claims for declaratory relief.[9]

### B. Mrs. Murphy's Motion (Doc. 161)

Mrs. Murphy moves for partial summary judgment on Evanston's fraud or collusion defense to her counterclaims. (Doc. 161 at 2.) Because the Court determines that Evanston properly denied coverage under the assault and battery exclusion, it need not consider the arguments raised in her motion.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED:**

1. **Granting** Evanston Insurance Company's Motion for Summary Judgment based on the commercial general liability insurance policy's assault and battery exclusion. (Doc. 154.) In all other respects, the Motion is denied as moot.

2. **Denying as moot** Defendant/Counter-Claimant Tracy Portee Murphy's Cross Motion for Partial Summary Judgment Re: 'Fraud or Collusion.' (Doc. 161.)

3. **Denying as moot** Defendant/Counter-Claimant's Motion to Strike Report of Scott Salmon (Doc. 173); Defendant Murphy's *Daubert* Motion Regarding Scott Salmon

---

[9] Evanston makes an alternative argument that it is entitled to summary judgment because the *Damron* agreement is the product of fraud and collusion. (Doc. 154 at 13.) Because the Court holds that Evanston is entitled to summary judgment based on the assault and battery exclusion, it need not reach this argument.

- 13 -

(Doc. 182); and Evanston Insurance Company's Motion to Exclude Expert Frederick C. Berry, Jr. (Doc. 186).

    4.    Directing the Clerk of the Court to terminate this case and enter judgment accordingly.

Dated this 22nd day of June, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge